**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

ROY L. JAMES and                                                    **PLAINTIFFS**
ETHEL JAMES

V.                                                         **NO. 4:20-CV-124-DMB-JMV**

ENOCH AILES, JR., et al.                                            **DEFENDANTS**

## ORDER

Roy and Ethel James claim that the defendants' negligence caused Enoch Ailes Jr. to collide the commercial tractor/trailer he was driving while transporting U.S. mail into the automobile driven by Roy, resulting in severe bodily injuries to Roy. The Jameses seek to hold liable the United States of America based on a service contract executed by a U.S. Postal Service employee under which Enoch transported mail. The United States has filed three separate motions to dismiss, arguing that the Jameses failed to exhaust their administrative remedies as to certain claims and that the Jameses' claims against it are barred by sovereign immunity. Because the Court finds that Ethel failed to comply with exhaustion requirements and that the United States has not waived sovereign immunity with respect to Roy's claims, the claims against the United States will be dismissed.

## I
## Procedural History

On July 20, 2020, Roy L. James and Ethel James filed a second amended complaint[1] in the

---

[1] Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within certain time limits. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* After filing their initial complaint on July 10, 2020, Doc. #1, and a first amended complaint on July 19, 2020, Doc. #4, the Jameses did not seek leave to file their second amended complaint. However, since the United States specifically challenges the second amended complaint, *see* Doc. #25 at 2, and the other defendants answered the second amended complaint, *see* Doc. #11, the Court treats the second amended complaint as the operative pleading. *See Jefferson v. Broadnax*, No. 3:12-CV-4638, 2013 WL 3455707, at *1 n.1 (N.D. Tex. July 9, 2013) ("The Court treats Plaintiff's First Amended Complaint … as the operative pleading in this case. Although filed

United States District Court for the Northern District of Mississippi against Enoch Ailes, Jr.; Gwendolyn Ailes; Enoch Ailes, Jr. d/b/a B.H. Wellington, Inc.; B.H. Wellington, Inc.; Donna Parks; the United States of America; and John Does 1 through 5.  Doc. #5.  The Jameses assert claims for damages under the Federal Tort Claims Act ("FTCA") arising from a vehicular accident between Roy and Enoch.  Doc. #5.  On September 21, 2020, the United States, pursuant to 28 U.S.C. § 2679, substituted itself for Parks on the ground that "at the time of the conduct alleged, … Parks was acting within the scope of her employment" with the United States Postal Service ("USPS").  Doc. #23 at 2.

On September 25, 2020, the United States filed a motion to dismiss Roy's claims with prejudice, asserting sovereign immunity and that the claims are "jurisdictionally barred by the doctrine of discretionary function."  Doc. #24.  The same day, the United States also moved to dismiss Ethel's claims with prejudice, arguing her failure to exhaust administrative remedies, sovereign immunity, and the statute of limitations.  Doc. #26.  Additionally, the United States submits that Ethel's claims "are derivative and subject to dismissal should the Court grant the United States' separate Motion to Dismiss" Roy's claims.  *Id.* at 1.  Briefing is complete on both the motion to dismiss Roy's claims[2] and the motion to dismiss Ethel's claims.[3]

On October 23, 2020, the Jameses filed a motion "to conduct jurisdictional discovery on the jurisdictional issue" of whether Enoch was acting as a USPS employee at the time of the accident.  Doc. #35 at 3.  United States Magistrate Judge Jane M. Virden issued an order denying the motion for jurisdictional discovery because the Jameses "failed to show they are entitled to any

---

without leave of court, [the defendant] tacitly consented to the amendment by specifically addressing and reurging its motion to dismiss in response to the amended complaint.").

[2] *See* Docs. #25, #32, #39.

[3] *See* Docs. #27, #34, #40.

discovery."[4]  Doc. #44 at 2.  However, the order provided that the Jameses "may renew [their jurisdictional discovery request] on or before December 28, 2020, … by filing a motion that specifies the facts they contend are crucial to meet Defendants' motion to dismiss and the discovery requests they intend to serve," and explains how the information is relevant to the jurisdictional issue.  *Id.*

Two weeks later, the Jameses timely filed "Plaintiffs' Motion Reurging Jurisdictional Discovery."  Doc. #46.  After the motion was briefed[5] and a hearing held,[6] Judge Virden denied the motion except for certain limited requests, finding that "the proposed discovery, including general reference to 'depositions,' is not narrowly tailored to reveal materially relevant information necessary to resolve the pending motion to dismiss on grounds of immunity."  Doc. #51 at 1.

On March 1, 2021, the United States filed a supplemental motion to dismiss Roy's claims, arguing that Roy "failed to administratively exhaust his claims of negligent acts committed by United States Postal Service office employees."  Doc. #53.  Roy responded to the motion, Doc. #55; the United States did not reply.

## II
## Relevant Standards

The United States brings its motions under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. #24 at 1; Doc. #26 at 1; Doc. #53 at 1.

Motions under Rule 12(b)(1) challenge a court's subject matter jurisdiction.  A Rule 12(b)(1) motion to dismiss is characterized as either "facial" or "factual."  *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).  Where, as here, evidentiary

---

[4] The order also instructed B.H. Wellington to file a corporate disclosure statement within three days of the order, Doc. #44, which B.H. Wellington did, Doc. #45.

[5] Docs. #47, #48.

[6] Doc. #50.

materials are submitted in support of the motion to dismiss, the attack is said to be factual. *Id.* "In assessing whether there is jurisdiction, courts may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Joiner v. United States*, 955 F.3d 399, 403 (5th Cir. 2020).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's ground for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021). A court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff. But [the court] do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 306–07 (cleaned up).

## III
## Factual Allegations

Enoch "operated a commercial Freightliner tractor and trailer on behalf of himself, Gwendolyn Ailes, Enoch Ailes, Jr. d/b/a B.H. Wellington, Inc. and B.H. Wellington, Inc." (collectively, "Ailes Defendants"). Doc. #5 at 5. The Ailes Defendants "owned/leased" the tractor trailer and Enoch used it to transport mail for the USPS pursuant to a contract between B.H. Wellington and the USPS. *Id.* at 6–7; *see* Doc. #5-3.[7] Donna Parks, as the USPS's Contracting Officer, executed the contract on the USPS's behalf.[8] Doc. #5 at 8; *see* Doc. #5-3. Parks allowed

---

[7] "Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading." *In re RadioShack Corp. ERISA Litigation*, 547 F. Supp. 2d 606, 610 (N.D. Tex. 2008) (collecting authorities). However, "[w]here the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Id.*

[8] Gwendolyn Ailes executed the contract on behalf of B.H. Wellington. *See* Doc. #5-3.

B.H. Wellington to enter the contract "without first providing USPS with the required proof/verification of sufficient combined single limit liability insurance coverage … as required by USPS." *Id.* Parks also "failed to inspect, document and receive written verifiable proof of proper and sufficiently maintained vehicle(s) and equipment as required by USPS." *Id.* at 8.

On February 9, 2018, while traveling "on his route on Highway 82 West," Enoch, who "was not paying attention to the traffic in front of him, nor the traffic beside him on his right side, as he began to pass [Roy]," "crossed over the right center line and struck [Roy's] vehicle." *Id.* at 6, 12. Enoch's vehicle "made contact with the left rear passenger door/rear wheel area of [Roy's] vehicle causing the collision and resulting in painful, severe, and life threatening injuries to" Roy. *Id.* at 11. At the time of the accident, Enoch was driving the tractor trailer at "63 miles per hour in inclement weather." *Id.* at 12.

**IV**
**<u>Exhaustion</u>**

Under the FTCA, before bringing a claim against the United States for money damages caused by the negligence of any employee of the government, a claimant must first "present[] the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The claim must be "presented … within two years after such claim accrues" or "be forever barred." 28 U.S.C. § 2401. "A claim is properly presented within the meaning of § 2675(a) when the agency is given sufficient written notice to commence investigation and the claimant places a value on the claim." *Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014). As long as the government receives "actual, written notice of the claim sufficient to enable [the agency] to investigate and to place a value on the claim[, t]he basic notice function of the

5

administrative exhaustion requirement [is] satisfied." *Id.* at 451.

## A. Ethel's Loss of Consortium Claim

The second amended complaint alleges that "[a]s a direct and proximate result of the negligence, wrongful acts, and omissions by the Defendants, the Plaintiff, Ethel James, sustained loss of consortium and expenses in attending to her husband." Doc. #5 at 20. The United States argues this Court lacks jurisdiction over Ethel's claims because Ethel "failed to file an administrative claim under 28 U.S.C. § 2675(a)" and, because she failed to file an administrative claim within two years of the accident, her claim is barred. Doc. #27 at 6–7. Ethel responds that her claims should not be dismissed because "the damages for her derivative loss of consortium claim ($10,000.00) was [sic] intended to be included in Mr. James SF95 administrative claim" and need not be brought as its own administrative claim. Doc. #34 at 5.

Roy submitted a Standard Form 95 ("SF-95") to the USPS on December 5, 2019, providing details related to the accident and his injuries and placing a total value of $7,503,000 on his claim. Doc. #26-1 at PageID 355. Although Roy's SF-95 does not refer to Ethel or her loss of consortium claim, it did (1) provide the USPS with notice of claims related to the accident sufficient to allow the USPS to investigate and (2) placed a value on the claims. The value placed on the claims is equivalent to what Roy and Ethel seek in the second amended complaint for their combined claims against the defendants. *Compare id. with* Doc. #5 at 21. However, courts that have addressed whether a spouse's claim can be inferred from the allegations of the injured person "have routinely held that a spouse's loss of consortium claim must be separately exhausted in order [to] give the court subject-matter jurisdiction." *Storey v. United States*, No. 3:16-CV-184, 2017 WL 3396405, at *2 (N.D. Miss. Aug. 8, 2017) (collecting cases). Because Ethel did not present her own claim

to the USPS and thus failed to exhaust her administrative remedies,[9] this Court lacks jurisdiction over her loss of consortium claim against the United States.

## B. Roy's Claims based on Parks' Alleged Negligence

The United States argues that Roy "failed to administratively exhaust his claims of negligent acts committed by United States Postal Service office employees, such as Donna Parks" because "the SF-95 fails to mention any purported negligence of United States Postal Service employee[] Donna Parks."[10]  Doc. #54 at 1–2.  Roy responds that the allegations in the SF-95 "put the United States Postal Service on notice to thoroughly and properly investigate all matters regarding the Contract Route Service Order Number 38760, including, but not limited to the handling/verification of the equipment of Enoch Ailes and the handling/verification insurance coverage … which was the duty and obligation of Donna Parks."  Doc. #55 at 1–2.

The Fifth Circuit does not require "plaintiffs to specifically enumerate legal theories of recovery in their administrative claims."  *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030

---

[9] As pointed out by the United States, even had Ethel exhausted her administrative remedies, the dismissal of Roy's claims necessitates the dismissal of her loss of consortium claim because it is derivative of Roy's claims.  *See* Doc. #27 at 8; *Applewhite v. Dep't of Veterans Affairs*, 364 F. App'x 97, 100–01 (5th Cir. 2010) (after dismissing husband's claim, district court properly dismissed wife's loss of consortium claim as derivative of husband's claim); *Schoemer v. United States*, 59 F.3d 26, 30 (5th Cir. 1995) (court's determination that it lacked jurisdiction under exception to the FTCA also barred wife's derivative claims).  Roy's claims will be dismissed, as explained below.

[10] The United States also argues that any claims against Keith Harris, which were raised for the first time in response to the motion to dismiss Roy's claims, are barred because Roy "failed to timely assert these claims in his SF-95."  Doc. #54 at 2.  Harris is not mentioned in the second amended complaint. *See* Doc. #5.  "As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court."  *Middaugh v. InterBank*, __ F. Supp. 3d __, No. 6:19-CV-52, 2021 WL 1100425, at *10 (N.D. Tex. Mar. 23, 2021); *see Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) ("It is well settled in [the Fifth Circuit] that a claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the Court.") (cleaned up).  But "the Fifth Circuit has held that district courts may construe new allegations and theories in responses to dispositive motions as motions for leave to amend, thus providing the court a path to consider the new allegations."  *Middaugh*, 2021 WL 2678914 at *4; *but see Jackson*, 3 F.4th at 189 ("[T]he sort of relief mentioned … construing a request for *X* as an implied request for *Y*—is normally reserved for pro se litigants.").  Roy's claims are based upon "the handling/verification [of] insurance coverage in accordance with the [contract], which was the duty and obligation of Donna Parks and Keith Harris," who are both employees of the United States.  Doc. #55 at 1–3.  Thus, should the Court consider the claims against Harris, the Court's ultimate conclusion that it lacks jurisdiction over the claims based on Parks' alleged negligence applies with equal weight to the claims against Harris.

(5th Cir. 2011). Rather, "[a]s long as the Government's investigation of the claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Id.* (cleaned up). "However, … even though the requirements of the FTCA are minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." *Wright ex rel. Wright v. United States*, 914 F. Supp. 2d 837, 845 (S.D. Miss. 2012) (quoting *Cook v. U.S. on Behalf of U.S. Dept. of Labor*, 978 F.2d 164, 166 (5th Cir. 1992)).

Here, Roy's SF-95 provides general facts related to the collision, Enoch's alleged acts and omissions, and details regarding Roy's alleged injuries. Although the SF-95 states that Enoch was "delivering/transporting U.S. Mail … under [the contract] at the moment" the collision occurred, nothing in the SF-95 refers to Parks. Nor is it clear that an investigation into the accident would alert the USPS to possible issues with B.H. Wellington's compliance with the contract's terms. On the other hand, the USPS did receive notice of Roy's claim regarding the accident, and the total amount of damages sought on all theories of liability in the complaint is identical to the value placed on the claim in the SF-95. Regardless, the Court need not decide whether Roy satisfied the administrative exhaustion requirement because, as explained below, the Court ultimately determines that the United States has not waived its sovereign immunity for these claims.

## V
## <u>Sovereign Immunity</u>

The Jameses assert in the second amended complaint that (1) Enoch, "as an agent or employee of the USPS," caused the accident and, because the United States was negligent in its hiring, training, supervision, and retention of Enoch, the United States "is liable for the negligent actions and omissions of its employee," Doc. #5 at 14–15; (2) Parks was negligent in contracting with B.H. Wellington without first verifying it had an insurance policy with the required coverage

and properly maintained equipment and, because the USPS "was negligent in its failure to exercise control of its employees by implementing policies, rules and regulations for its contracting officers," the United States is liable for Parks' actions, *id.* at 16–17; and (3) "under the doctrine of *respondeat superior*, USPS is vicariously liable for the negligent acts and omissions of its' employees, including Donna Parks and Enoch Ailes, Jr.," *id.* at 18.

## A.    Claims Based on Enoch's Alleged Negligence

The United States contends Roy's claims are barred by sovereign immunity because all of the defendants, including Enoch and B.H. Wellington, were independent contractors. Doc. #25 at 7–10. Roy responds that Enoch "was not an independent contractor" because "the United States had and exercised continuous control over the day-to-day operations of [Enoch's] pick-up, hauling and delivery of USPS mail." Doc. #32 at 9. The United States replies that the "USPS did not control the work of [Enoch], but rather included language in the contract to provide logistical parameters to ensure that the mail was timely and smoothly delivered." Doc. #39 at 2.

"The United States as sovereign, is immune from suits save as it consents to be sued." *Creel v. United States*, 598 F.3d 210, 213 (5th Cir. 2010) (alteration omitted). Pursuant to the FTCA, Congress has waived sovereign immunity for acts committed by "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346. "The FTCA, however, does not cover acts committed by independent contractors." *Creel*, 598 F.3d at 210.

"When there is a dispute whether the independent-contractor exception bars a lawsuit, … the dispositive question is whether or not the individual *that caused* the plaintiff's injuries is an employee of the federal government or of an independent contractor." *Linn v. United States*, 281 F. App'x 339, 344 (5th Cir. 2008) (collecting cases). The "critical factor in determining whether

an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Id.* Factors a court should consider in determining whether an individual is an employee of the government or an independent contractor include "the individual's outside work, if any; the type of occupation; the skill required; whether the employer or worker provides the instrumentalities required to do the work; the length of the relationship; method of payment; and whether or not the parties believe they are creating the relation of master and servant, among others." *Jimenez v. United States*, 20-CV-575, 2021 WL 860008, at *4 (W.D. Tex. Mar. 5, 2021) (citing *Linkous v. United States*, 142 F.3d 271, 276 (5th Cir. 1998)).

As pointed out by the United States, the contract here requires that B.H. Wellington, as the supplier,[11] (1) provide a minimum number and type of vehicles to complete the contract, Doc. #24-2 at PageID 299; (2) "equip each vehicle or supply each driver with a cellular phone to enable the Postal Service or the driver to initiate two-way communications," *id.* at PageID 301; (3) maintain the vehicles, including using a "United States Mail" sign only when hauling mail, *id.* at PageID 304; (4) employ individuals to haul the mail, *id.* at PageID 305; (5) maintain and repair any equipment, "including any equipment leased by the supplier from the Postal Service," *id.* at PageID 306; and (6) maintain liability insurance with certain liability policy limits, *id.* at PageID 308. "Many courts have recognized that drivers hauling mail under similar contracts are not Postal Service employees." *Jimenez*, 2021 WL 860008, at *6 (collecting cases).[12] Although, as Roy recognizes,[13] the contract details "general" requirements as well as specific requirements related

---

[11] Doc. #24-2 at PageID 281.

[12] The contract in *Jimenez* allowed for "random inspections by USPS employees of equipment used to perform transportation services … and screening of contract drivers hauling mail and accessing postal facilities." 2021 WL 860008, at *5.

[13] Doc. #32 at 9–11.

to the work performed, the vehicles used, screening and identification of individuals hired by B.H. Wellington, and insurance, "such contractual provisions directing detailed performance generally do not abrogate the contractor exception [because t]he United States may fix specific and precise conditions to implement federal objectives without becoming liable for an independent contractor's negligence." *Id.* at *5 (cleaned up) (quoting *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005)).

In this case, the language of the contract and the burdens placed on B.H. Wellington as the supplier are indicative of an independent contractor relationship and do not show that the United States exercised such day-to-day control over Enoch as to make him an employee.[14] Accordingly, the United States has not waived its immunity for claims against it based on Enoch's actions, and this Court lacks jurisdiction over such claims.

### B. Claims Based on Parks' Alleged Negligence

The United States also argues that Roy's "claims based upon the United States' exercise or performance or the failure to exercise or perform a discretionary function are barred by the discretionary function exception to the FTCA." Doc. #25 at 13. Roy responds that his claims are not barred by the discretionary function exception because Parks' "actions and failures to act or omissions were not discretionary functions" but rather "her duties were contractual requirements, contractual directives." Doc. #32 at 13.

The discretionary function exception "excepts [from the FTCA's waiver of immunity] any claim that is based upon a Government employee's performance of a discretionary function or duty whether or not the discretion involved be abused." *Campos v. United States*, 888 F.3d 724, 730

---

[14] Both the government and Roy focus on day-to-day control in their arguments and do not address additional factors, such as whether B.H. Wellington has other contracts and the method of payment.

(5th Cir. 2018) (cleaned up).

> The discretionary function exception has two parts. First, the court must consider whether the conduct at issue was discretionary in nature and involved an element of judgment or choice. If a plaintiff can point to a specific, nondiscretionary function or duty that prescribes a specific course of action for an agency or employee, then there is no discretion. Second, if there is discretion, the court must evaluate whether it is of the kind that the discretionary function exception was designed to shield.

*Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (cleaned up). "Congress created the discretionary function exception to protect legislative and administrative decisions from judicial second-guessing. Thus, decisions that are susceptible to legislative or administrative considerations are the type of judgment that fall within the discretionary function exception's scope." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (citing *United States v. Gaubert*, 499 U.S. 315, 323–25 (1991)).

Roy relies on two provisions of the contract—Section B.7 b and Section B.2 e—to support his argument that Parks was contractually obligated to obtain proof of insurance of the required minimum amount and proof that the vehicles were properly maintained. *See* Doc. #32 at 2. Section B.7 b. provides:

> Vehicles with a gross vehicle weight rating of 10,000 pounds or more, require a minimum of $750,000 Combined Single Limit (CSL).

> Coverage must meet all minimum insurance requirements imposed by federal, state and local law or regulation when such requirements exceed the minimum coverage required by the Postal Service as stated above.

> The Supplier shall furnish to the contracting officer, prior to commencement of service under this contract, and thereafter as the contracting officer may require, proof that the supplier has all required insurance, plus a copy of the applicable policy or policies.

Doc. #24-2 at PageID 309. Section B.2 e provides:

> In the event the Postal Service deems it necessary to tender to the supplier for transportation on this route trailers other than those provided by the supplier, the

12

supplier shall not be liable for trailer license, temporary permits, or other fees imposed by state or local agencies.

The supplier will not be tendered, nor transport, any trailer which does not meet the minimum requirements for safety as required by the Motor Carriers Safety Regulations, and by other requirements imposed by state or local governments.

No additional compensation will be allowed the supplier for transporting trailers other than those the supplier furnishes, nor will any deduction be made from the contract rate of pay, when the Postal Service tenders to the supplier trailers other than those furnished by the supplier, unless the tender of such trailers is because the supplier fails to provide the contractually obligated number of trailers to the Postal Service. In the latter event, a sum equal to the cost the Postal Service incurs in furnishing trailer(s) will be deducted from the pay normally due the supplier.

*Id.* at PageID 299. These provisions place a burden on B.H. Wellington, as the supplier, to (1) obtain insurance and provide Parks, as the contracting officer, with proof of such insurance before the commencement of service and, if required, at any point after; and (2) supply vehicles that comply with the applicable safety requirements. They do not, however, place a contractual burden on Parks, or the USPS, to verify B.H. Wellington's compliance with these requirements. The decision whether or not to do so is discretionary. *See Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function. Similarly, a decision to hire a contractor and the choice of contractor are policy-based discretionary decisions.") (citations omitted). Thus, Roy's claims based on Parks' alleged negligence are properly dismissed under the discretionary function exception.

### C. Summary

For the reasons explained above, this Court lacks subject matter jurisdiction over the claims against the United States based on Enoch's alleged negligence, and also lacks jurisdiction over the claims based on Parks' alleged conduct. Thus, all of Roy's claims against the United States will

be dismissed for lack of jurisdiction. Dismissal, however, will be without prejudice.[15]

## VI
## Conclusion

The United States' motions to dismiss [24][26] are **GRANTED in Part and DENIED in Part**. They are GRANTED to the extent they seek dismissal but DENIED to the extent they seek dismissal with prejudice. The United States' supplemental motion to dismiss [53] is **DENIED as moot**. The claims against the United States, including claims asserted against Donna Parks, are **DISMISSED without prejudice**.

**SO ORDERED**, this 30th day of August, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[15] The Fifth Circuit has affirmed with prejudice dismissals based on the doctrine of sovereign immunity. *See, e.g.*, *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1053 (5th Cir. 1998); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 530 (5th Cir. 1992) (foreign sovereign immunity case). However, none of those opinions appear to have directly addressed the propriety of a with prejudice dismissal. The Fifth Circuit opinions directly addressing the issue have held that a dismissal for sovereign immunity should be without prejudice. *See United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019) ("Claims barred by sovereign immunity are dismissed without prejudice, not with prejudice."); *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 620 (5th Cir. 2020) (*quoting $4,480,466.16 in Funds*). The Court follows this direct guidance.